DAVIS, Circuit Judge,
concurring:
I am pleased to join the majority opinion in full and applaud the excellent craftsmanship of my good colleague in authoring the opinion. I particularly appreciate the majority opinion’s reminder that, in intentional discrimination cases, we should not examine the trees so minutely that we lose sight of the forest. The ultimate question in this case, as in all intentional discrimination cases, is not whether the McDonnell Douglas test is satisfied. It is instead, as the majority opinion teaches, whether the plaintiff has generated a genuine dispute of material fact that she is the victim of intentional discrimination, notwithstanding facially plausible reasons offered by the employer for its adverse employment action. The proof scheme is but a useful tool to help identify and resolve that real issue.
Although employment discrimination cases are inherently fact-specific, this case stands for an important premise. Our holding makes it abundantly clear that this court will evaluate the actual application of employment tests and practices that employers claim to apply in a neutral manner. See 42 U.S.C. § 2000e-2(h) (employment tests are not unlawful as long as they are not “designed, intended or used to discriminate because of race, col- or, religion, sex or national origin”). We will scrutinize these ostensibly neutral practices with care, particularly those that insulate employers from liability in workplace environments infused with discriminatory animus. An ultimate decision maker’s proclamation that he or she neutrally applied a policy or test or practice simply will not with stand scrutiny under Fed.R.Civ.P. 56 in the face of substantial direct and circumstantial evidence to the contrary, evidence, for example, that the employer makes exceptions to the use of, or that that employer selectively applies, the ostensibly “neutral” device.
The majority opinion cogently reasons to its conclusion that, in this case, “a reasonable fact finder could look askance at Stoddard’s selective use of the PAT, re *303 quiring Merritt to take the test and exempting men who, like Smith and Dalton, suffered arguably more debilitating physical setbacks and missed more work[,]” Maj. Op. at 300, and that “[t]he evidence would allow a jury to conclude that Old Dominion never wanted to hire Merritt in the first place and lends credence to the view that it was looking for a reason to fire her.” Id. at 301. I firmly agree. As the majority opinion notes, this case presents “evidence that clearly indicates a discriminatory attitude at the workplace and ... illustrate^] a nexus between that negative attitude and the employment action.” Lettieri, 478 F.3d at 649 (quoting Harbour Rec. Club, 180 F.3d at 608).
Moreover, while there are certainly some facts in dispute, there are several evidentiary clusters that rest outside the credibility disputes alluded to by the majority. For example, as the majority opinion recognizes, it is undisputed that Merritt’s supervisor found Merritt’s work as a Pickup and Delivery driver to be fully satisfactory and that he even received compliments from clients about her work. It is also undisputed that Old Dominion applied the PAT test only on a “very variable” basis and did not apply it primarily to evaluate whether an employee could return to work after a workplace injury. It is undisputed that the PAT test was never intended to test the rehabilitation of Merritt’s sprained ankle; instead, it was formulated to serve as a pre-employment test. It is undisputed that Merritt was fired because she failed the PAT test. And lastly, it is undisputed that Old Dominion could only identify six female Pickup and Delivery drivers out of its workforce of 3,000 employees, and that Old Dominion replaced Merritt, one of those six female employees, with a male Pickup and Delivery driver. These undisputed facts are emphatically material to the ultimate issue of whether Merritt is the victim of intentional gender discrimination but they could easily escape careful consideration by a busy district court because they do not fit neatly within the McDonnell Douglas framework. The majority opinion persuasively demonstrates how a court’s analysis of intentional discrimination claims must accommodate probative evidence of every sort, and I am happy to join it fully.